UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CORINNE T. HAGGAS,

                Plaintiff,

v.                                                                                          6:17-CV-0636
                                                                                            (DNH/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                  OF COUNSEL:

CORINNE T. HAGGAS                                             PRO SE
62 Moreland St.
Little Falls, NY 13365

U.S. SOCIAL SECURITY ADMIN.                                   FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 4.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Corinne T. Haggas ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 20, 21.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1981.  (T. 61.)  She completed a two year college program.  (T. 260.)  Generally, Plaintiff's alleged disability consists of diabetes, right shoulder torn rotator cuff, neck and knee "problems," and depression.  (T. 259.)  Her alleged disability onset date is October 24, 2009. (T. 61.) Her date last insured is June 30, 2012.  (T. 61.)  She previously worked as a waitress.  (T. 260.)

   B.   **Procedural History**

On August 2, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act.  (T. 61.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On May 27, 2015, and at a supplemental hearing on September 16, 2015, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke.  (T. 29-38, 39-60.)  On September 23, 2015, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 9-28.)  On April 10, 2017, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 14-23.)  First, the ALJ found Plaintiff met the insured status

requirements through June 30, 2012 and Plaintiff had not engaged in substantial gainful activity since October 24, 2009. (T. 14.) Second, the ALJ found Plaintiff had the severe impairments of mild tendinosis and bursitis of the right shoulder, and diabetes mellitus. (T. 15.) The ALJ determined Plaintiff's elbow injury and mental impairment were non-severe impairments. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 17.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to:

> use her right, dominant, upper extremity to occasionally lift [five] pounds from floor to waist level and infrequently lift [three] pounds to shoulder level and overhead. Infrequent is defined as rarely. [Plaintiff] has no non-dominant side limitations. [Plaintiff] has no other exertional limitations. [Plaintiff] needs to be able to check her blood sugar and take insulin during the workday at usual break times.

(T. 18.) Fifth, the ALJ determined Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 22.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff essentially argues her impairment of diabetes renders her disabled. (Dkt. No. 21 at 1-4 [Pl.'s Mem. of Law].)

### B.  Defendant's Arguments

Defendant makes three arguments. First, Defendant argues the ALJ's step two determination was supported by substantial evidence. (Dkt. No. 20 at 11-14 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC determination was supported

3

by substantial evidence. (*Id.* at 14-18.) Third, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 18-19.)

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

4

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.  Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520[1]. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

---

[1]  Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

5

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

    **A.  The ALJ's Step Two Determination**

At step two of the sequential evaluation process, the ALJ must determine whether Plaintiff has a severe impairment that significantly limits her physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c).  Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.*, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe."  *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis."  *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523 (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if

6

considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F. Supp. 3d 578, 593 (S.D.N.Y. 2014) (citing *Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Here, the ALJ properly determined Plaintiff had the severe impairments of mild tendinosis and bursitis of the right shoulder, and diabetes mellitus. (T. 15.) The ALJ also properly determined Plaintiff's elbow injury and depression were non-severe impairments. (*Id.*) As stated by the ALJ, Plaintiff sought brief and limited treatment for an elbow injury. (*Id.*) The record contains no functional limitations associated with Plaintiff's elbow.

Substantial evidence in the record supported the ALJ's determination that Plaintiff's mental impairment was non-severe. In making her determination, the ALJ used the special technique which requires

> the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to

7

any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler v. Astrue*, 546 F.3d 260, 265-266 (2d Cir. 2008).

The ALJ found Plaintiff had no limitations in her activities of daily living or social functioning due to her depression.  (T. 16.)  The ALJ found Plaintiff had mild limitations in the area of concentration, persistence or pace and Plaintiff had no episodes of decompensation.  (T. 16-17.)  In making her determination the ALJ relied on the determination of non-examining State agency medical consultant, Daniel Mangold, M.D.  (T. 16.)  Dr. Mangold reviewed Plaintiff's records and determined that here was insufficient evidence to establish that Plaintiff had an affective disorder.  (T. 64.)  It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  S*ee* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e).  Although Plaintiff complained of anxiety and depression on occasion, she received no mental health treatment and no medical source provided work-related functional limitations associated with a mental impairment. Mental status examinations were routinely normal.  (T. 16, 450, 453, 456, 459, 462, 468, 471.)

Therefore, the ALJ's step two determination was proper and supported by substantial evidence.

### B. The ALJ's Step Three Determination

At step three the ALJ must then determine whether the severe impairment(s) found at step two meets the criteria of any impairment listed in Appendix 1.  20 C.F.R. §

404.1520(a)(4)(iii)(d). The impairments listed in Appendix 1 are considered severe enough to prevent Plaintiff from doing any gainful activity. *Id.* at § 404.1525(a). If a Plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 404.1509, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience. *Id.* at § 404.1520(d).

Plaintiff appears to argue the ALJ failed to properly assess her diabetes at step three. (Dkt. No. 21 at 1 [Pl.'s Mem. of Law].) As stated by the ALJ in her determination, diabetes was removed from the Listings prior to Plaintiff's application. (T. 18); *see* SSR 14-2p. As outlined in SSR 14-2p, although diabetes was removed from the Listings, the effects of diabetes, either alone or in combination, may meet or medically equal the criteria of a Listing in an affected body system. SSR 14-2p. The SSR provides examples, such as diabetic neuropathy under the neurological listing and cognitive impairments under the mental disorders listing. SSR 14-2p.

As stated herein, the ALJ properly determined Plaintiff's mental impairment was non-severe; therefore the ALJ did not consider that impairment under the mental disorders Listings. (T. 17-18.) The ALJ also examined Listings §1.02 Major Dysfunction of a Joint and §1.08 Soft Tissue Injury. (*Id.*) Lastly, the ALJ stated she considered Plaintiff's diabetes as directed by SSR 14-2p and 14-3p. The ALJ concluded Plaintiff's diabetes was not accompanied by clinical and laboratory signs and findings or equivalent signs and findings for any Listing in another body system under Appendix 1. (T. 18.)

9

Here, the ALJ's conclusion that Plaintiff's condition did not meet or equal a Listing was supported by substantial evidence. The record demonstrates that Plaintiff was not extremely limited in her ability to function due to diabetes. Although Plaintiff claims she had neuropathy in her hands, fingers, and feet, she fails to provide any evidence in the record to support this assertion. (Dkt. No. 21 at 1 [Pl.'s Mem. of Law].) Treatment notations from medical providers stated Plaintiff's diabetes did not cause retinopathy, nephropathy, or neuropathy. (T. 477.) To be sure, Plaintiff complained of numbness in her right extremity; however, the symptoms was a result of her shoulder/elbow injury and EMG results indicated "no definitive evidence of neuropathy, ulnar neuropathy, cervical radiculopathy, or peripheral neuropathy." (T. 362, 552.)

The ALJ properly assessed Plaintiff's severe impairments at step three of the sequential process and her determination was supported by substantial evidence. Therefore, it is recommended that the ALJ's step three evaluation and determination be upheld.

### C. The ALJ's Step Four Determination

Before considering step four of the sequential process, the ALJ must determine Plaintiff's RFC. 20 C.F.R. § 404.1520(e). The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." *Id.* at § 404.1545(a)(1). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c). Then the ALJ must determine whether Plaintiff has the RFC to perform her past relevant work. *Id.* at 404.1520(f).

Here, the ALJ properly assessed the medical opinion and other evidence in the record and her RFC determination was supported by substantial evidence. In formulating Plaintiff's RFC, the ALJ relied on the opinion of the independent medical examiner, Charles Reina, M.D. (T. 20.) The ALJ afforded Dr. Reina's opinion "significant weight" because he examined Plaintiff on several occasions and his opinion was supported by and consistent with other evidence of record. (T. 21.) On December 7, 2011, Dr. Reina examined Plaintiff in connection with her worker's compensation claim, and determined she could return to work four hours a day with no pushing, pulling, carrying or lifting with her right arm of more than two-to-three pounds beyond tabletop height, and with no overhead reaching. (T. 403.) In formulating his opinion, Dr. Reina also reviewed Plaintiff's medical record, including medical imaging. (T. 400-404.) Plaintiff could then "graduate to eight hours with the light duty restrictions ongoing and contingent upon her response [to] treatment." (*Id.*) On September 5, 2012, Dr. Reina determined Plaintiff's work restrictions were "unchanged." (T. 392.)

The ALJ further took into consideration a September 30, 2013 examination and Functional Capacity Evaluation ("FCE") by occupational therapist, Michale Enos. (T. 420-437.) Mr. Enos determined Plaintiff could perform sedentary level work, as that term is defined by the DOT, for eight hours a day. (T. 420.)

Treating endocrinologist, Prashant Nadkarni, M.D., completed a medical source statement in 2015. (T. 610-613.) Dr. Nadkarni opined he was "unable to complete" the sections requesting functional limitations. (T. 611-612.) When asked if Plaintiff required breaks during an eight hour day, he answered "yes," Plaintiff required a break once every four hours for 15-30 minutes. (T. 612.) When asked how many days a month

11

Plaintiff would be absent on average, Dr. Nadkarni checked the box "about one day per month." (T. 612.)

The ALJ afforded Dr. Nadkarni's opinion "some weight." (T. 21.) The ALJ reasoned that Dr. Nadkarni's opinion regarding unscheduled breaks and missed days were not supported by his treatment notations which failed to document any symptoms that would require such limitations. (*Id.*) The ALJ stated such conclusions were "speculative" and Plaintiff could check her blood sugar levels during usual break times. (*Id.*)

Any error in failing to include Dr. Nadkarni's break and absentee limits in her RFC determination is harmless error. Dr. Nadkarni's opinion, that Plaintiff required a break every four hours in an eight hour workday day, would not preclude work. Typically, an eight hour work day includes a morning break, a lunch break, and an afternoon break at approximately two hours intervals. SSR 96-9p. Such breaks would easily accommodate Dr. Nadkarni's opinion. Further, at the hearing, the vocational expert ("VE") testified the tolerance for missed days would be no more than one day per month. (T. 37.) Therefore, although the ALJ did not adopt the break and absentee opinions provided by Dr. Nadkarni's, any error would be harmless because such limitations would not preclude Plaintiff from performing work.

In making her RFC determination, the ALJ also assessed Plaintiff's credibility. In determining whether a plaintiff is disabled, the ALJ must also make a determination as to the credibility of the plaintiff's allegations. " 'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth

his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.' " *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

The ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms was not fully credible. (T. 19.) In making her determination, the ALJ considered the medical evidence in the record, Plaintiff's treatment history, her work history, and her activities of daily living. (T. 19); *see* 20 C.F.R. § 404.1529(c)(3)(i)-(vii) (factors an ALJ must consider in evaluating a plaintiff's credibility). Because the ALJ properly evaluated Plaintiff's credibility, cited substantial evidence in the record to support her determination, and the Court's "sharply limited scope of [] review," it is recommended that the ALJ's credibility determination be upheld. *Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017).

Overall, the ALJ's RFC determination was supported by substantial evidence in the record. The ALJ properly assessed the medical opinion evidence, and objective evidence, in the record and the ALJ cited substantial evidence to support her RFC determination. The ALJ relied on the record as a whole, including the opinions of Dr. Reina and Dr. Nadkarni, and the FCE results. The ALJ also properly assessed Plaintiff's credibility. It is therefore recommended that the ALJ's RFC determination be upheld.

**D.  The ALJ's Step Five Determination**

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her age, education, and work experience, and RFC to determine whether jobs exist in the national economy Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir. 2010)).  A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether vocational expert ("VE") testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605-606.  Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

Where the hypothetical posed to the VE is based on an ALJ's RFC finding which is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the VE's testimony.  *See Salmini*, 371 F. App'x at 114 (Court found that the

14

ALJ properly posed a hypothetical question to the VE when that hypothetical was based on the ALJ's correct RFC assessment).

Here, the ALJ's hypothetical to the VE paralleled her RFC finding. (T. 32-33.) The VE testified that a person with Plaintiff's vocational profile and RFC could perform the occupations of telephone quotation clerk (DOT 237.367-046), pari-mutuel ticket checker (DOT 219.587-010)[2], and call out operator (DOT 237.367-014). (T. 33-34.) The three occupations are classified as sedentary[3]. *See* DOT 237.367-046, DOT 219.587-010, DOT 237.367-014.

Because the ALJ did not err in formulating her RFC assessment, the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). The ALJ properly relied on this testimony in finding Plaintiff was not disabled under the Act. (T. 23.) Therefore, it is recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

---

[2] The ALJ's written decision contains a harmless typographical error. The decision refers to the occupation of pari-mutuel ticket checker as "paramutual ticket checker." (T. 23.)

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:   May 7, 2018

_____
William B. Mitchell Carter
U.S. Magistrate Judge